The next case this morning is number 520038 People vs. Jones. Arguing for the appellant, Lester Jones, is Karen Weiberg. Arguing for the appellate, People of the State of Illinois, is Tim Berkley. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Mr. Weiberg, are you ready to proceed? Yes, indeed, your honor. Then go right ahead. Thank you. May it please the court, counsel. We have raised two issues in our briefs in this case. My hope is to touch on both of them here during my remarks, although I am aware the time is limited. We'll begin with issue 1, in which we have argued that Mr. Jones is being denied his right to a full and fair direct appeal due to an incomplete record, which is incomplete due to no of his own. Now, when we talk about an incomplete record here, what we're talking about is two and a half years of pretrial proceedings in this first-degree murder case, none of which were recorded or transcribed. So we have nothing, no record whatsoever of that two and a half years worth of proceedings, other than the short summary orders that the circuit court issued after each hearing. Now, where a defendant argues, as Mr. Jones has here, that they are being denied their direct appeal due to an incomplete record, they're generally required to show a couple of things. They are required to show that they have a colorable need for the missing portions of the record, and they are required to show that the record is incomplete due to no fault of their own. Now, here, as far as the colorable need is concerned, that is readily shown, in particular, by the letters and motions that Mr. Jones himself was submitting to the court during this period of time. He's submitting a couple of motions addressing his speedy trial issues. He sent letters detailing some of what was going on during this period of time, specifically saying, I've been asking to have things put on the record, and yet somehow they never end up on the record, which is supported by the absence of a record here, saying that he had been trying to invoke his speedy trial rights, but he had been unable to do so. He had not been allowed to do so, saying that he had not been getting written into his court date so that he could not address these matters personally and immediately. And there are, by my count, I counted six court dates in a row, so over a six-month period, four of those explicitly state on the little order that he was not present. Two of those don't say one way or the other whether he was or was not. So we would say, what little record we have here once again supports that assertion. Now, all of these assertions combined with an order that the circuit court entered stating that it was continuing the case over defendant's objection, but still tolling the speedy trial term without providing any explanation for that. All of these things put together give rise to at least two, possibly three potential issues here, which is to say one, whether there was in fact a violation of the two, whether Mr. Jones was being denied the effective assistance of counsel, particularly where he averts that he had been asking his attorney to go ahead and demand trial for him. He says his attorney told him he was going to do so, but then it never happened and he was not getting written into the court date, so he could not do anything about it. And third, depending on what may have happened on some of those court dates that he actually was there, there is at least the potential that there's a denial of his right to represent himself. We really have no idea because that would be the one way he could try to assert his speedy trial demand over counsel's objection would be to try to dismiss counsel. Unfortunately, again, we simply have no record. So we have enough here to tell that there are potential problems. There are issues here that require resolution. However, absent two and a half years of transcripts, we have absolutely no way in which to determine the final merits of those claims. We do not know what the grounds were on which various court dates were continued. We do not know if objections were raised. We do not know if speedy trial demands were made. We do not know what reasons defense counsel may have given for any of the things that defense counsel did. Bottom line, we simply lack any of the factual knowledge to be able to determine ultimately whether A, Mr. Jones is being denied his right to a speedy trial or B, whether he was being denied his right to the effective assistance of counsel. Now, the second question there revolves around the question of whether the record is incomplete due to any fault of Mr. Jones. Now, on that point, we would again note part of this is contained in Mr. Jones' own letters. He says, I've been asking for things to be placed on the record, and yet somehow things never end up on the record. So that in and of itself indicates that at least as far as Mr. Jones personally is concerned, he is trying to have these things placed on the record, but it's not happening. As far as counsel is concerned, we have no idea what counsel was doing. The orders in question here, these little summary orders, don't say anything about a court reporter being present or not being present. Because we have absolutely no transcripts of any of this, we have no idea if counsel ever requested a court reporter to be present. We have no idea if such a request was denied. We don't know what was happening. But what we have requested is not requesting a court reporter, which we maintain that allowing two and a half years of a first degree murder case to go completely unrecorded is on its face deficient performance. Or counsel was requesting it, in which case, once again, this is not Mr. Jones' fault. Either way, it is not Mr. Jones' fault. There was nothing that he could do, particularly on those court dates where he himself was not even brought in, he himself was not even present. There's nothing that he could have done to have these dates placed on the record. He did everything he could do, filing motions, sending letters, trying to raise this problem with the court, and unfortunately, he did not succeed. Now, we would note in the state's brief, they rely on Rule 608 and contend that under Rule 608, the record here was not incomplete. First of all, as argued in our briefs, it's not even clear from this record whether 608 was at least two pro se motions filed by the defendant. We know one of those was ruled upon. One of them, we don't have any record whether it was or was not. We don't have any indication whether there were in-court proceedings on either of those motions, and so we have no idea whether we actually have the transcripts of any motion proceedings, which are required under Rule 608. But moreover, as argued in our briefs, what's at issue here is not a violation of the Supreme Court rule, it's a violation of the constitutional right to a direct appeal. And that right is where the record, however it may have been compiled, is due to no fault of the defendant's insufficient to allow him a full and fair direct appeal. And that is what has occurred here, and that is the test we find under cases like Stark and Ramos and Applebren. Turning to our second issue, we have argued that the state engaged in improper questioning during the voir dire of the jury, specifically with regard to the reasonable doubt standard. The state in their brief contends that this issue is resolved and controlled by two Illinois Supreme Court decisions in People v. Edwards and People v. Barrows. Both of those decisions are inapposite for several reasons. First, and in some respects foremost, because both of those decisions predate the adoption of Rule 431B, which established the procedure under Supreme Court rules by which the jury is to be voir dired on this exact subject. Once that procedure was established, the parties lacked the authority to pursue their own desired questioning on that subject. It is also very different because in Edwards and Barrows, as far as we can tell, there is very little description in those decisions of what was at issue. But as far as we can tell, the comment at issue was a single comment, and it was most importantly, not questioning. Here, the state not only commented on the reasonable doubt proposition, but it was asking getting every juror to affirm and agree, yes, we agree that it is not proof beyond any doubt. Yes, we understand that we're not going to get a definition. Yes, they even went so far as they had a conversation with one of the potential jurors about just what all that means when they don't get a definition of reasonable doubt and what that should indicate. And this is far more in-depth and far more significant than anything that was referred to in either Edwards or Barrows. In this case, didn't both the state and the defense comment on this issue during voir dire? Yes, indeed, they did, Your Honor. And we believe that both were wrong. And that's why we have argued the defense counsel provided ineffective assistance, both by failing to object to the state's questioning and by engaging in similar questioning themselves when they should not have. As to prejudice resulting from this error and plain error, the evidence in this case was extraordinarily closely balanced. As discussed in our briefs, the state's case against Mr. Jones really relied almost entirely upon the impeached and incredible testimony of D.R.A.'s Cox, who notably is the only other person we know for sure was in the room at the time that the shooting occurred, would have been the other prime suspect. There were, as detailed in our briefs, there were multiple issues with Cox's testimony, a great many inconsistencies and several impossibilities, including him apparently calling or being called by his girlfriend, Ms. Washington, if I recall correctly, at a time when both of his cell phones were sitting on a coffee table in another apartment. The video evidence calls a lot of his testimony into question also, and some of it is just purely incredible, such as Cox's detailed heroism in saving Mr. Jones from an attempted suicide, despite the fact that he was terrified the whole time that Mr. Jones was going to kill him. So for all of those reasons, we believe that the evidence here was very closely balanced, such that any error, particularly an error that relates to the reasonable doubt standard itself, could have weighed the scales against Mr. Jones and ultimately change the outcome of this case. If your honors don't have any other questions, then I will leave the rest of what I have for rebuttal. I have just one question. With regard to the completeness of the record, the defendant seems to be very involved in letter writing and memorandums and things of that nature. Do you think that those can provide an adequate substitute for us to know what was going on? I think they provide maybe a good starting place. I would note that, of course, there are those court dates that he wasn't present for, so he can't really say anything about what happened there. Also, these are letters and things that are being written by a pro se defendant who's not a lawyer and does not know what events that take place in the course of a hearing are necessarily significant for these purposes. He's giving his best reaction to what he saw, but he's not an attorney and he doesn't have that kind of education. So while this gives us some hints, this tells us, yes, there are some things happening here that we should be concerned about. I would say it is certainly not sufficient to allow us to resolve those issues. Okay, thank you. Justice Vaughn, do you have any questions? No questions. All right, Mr. Weiberg, obviously you'll be given your time for rebuttal. Mr. Berkley, go right ahead. Thank you. My name is Tim Berkley. I'm with the state's attorney's appellate prosecutor's office. May it please the court? I disagree with defense counsel's way he formulates his issue here. He suggests that the record is missing or that it's incomplete. We have a very complete record in this case. Every one of the status conference hearings resulted in an order. It was a form order that had the details of what occurred and defense counsel signed every one of those orders. Additionally, the first order occurred on March 9th, which is when the speedy trial time was told because defense counsel entered and signed the order saying that the speedy trial time was told. The continuance was on based on the defense's motion. As to the speedy trial time, we would have from the date of the arrest, which occurred on January 21st, through the date of the first status conference, which occurred on March 9th, 2017. If you do the math on that, that's 47 days. Now, later on, the court concluded that there was 48 days that attributed to speedy trial time. I think the court probably gave the defendant the first day when the rule would be that you start counting from the next day on. Let me just go basically first through the status conference motions. I put in my brief a detailed description of them, but they're very easily seen in the record. Some of the orders that counsel complains about are not status conference orders. They're handwritten orders. In this case, the first argument I make in response is that the record's not incomplete and it's not missing. All of the cases that he cites involve cases where the record is actually missing. There's a transcribed record that is missing or there is a videotape that is essential to the case that is missing. There was something missing. There was a defect in the case. We don't have that here. Every time there was a status conference, the court reduced it to writing into an order. Both parties signed off on it. Sometimes the defendant, if he was made present, signed it as well. These are case status conference. It's just about management of the cases and management of the docket. There was no evidentiary hearing. There was no witnesses taking the stand. There was nothing like that reflected in those orders. There's no reason to believe that there was an evidentiary hearing taking place at any of those things. Those were simply conferences. Additionally, the defendant is obligated to provide a sufficiently complete record for appellate review of his specific claims. In absence of such a record, it is presumed that the court heard orders signed by the judge are presumed to accurately reflect what occurred. In this case, my first argument is that there's a waiver. If defense counsel wanted those to be on the record, defense counsel was required to ask for a record. He didn't do that. He signed the order as though that was a sufficient record. That's a waiver. That's an affirmative action on the part of counsel to say we don't need a record. This order is sufficient. Additionally, your honor, in regards to speedy trial, the same holds true. Defense counsel signed the orders in which he agreed that the speedy trial time was told. In doing that, he affirmatively waives his client's speedy trial right. Again, that's a waiver. But I make a fallback argument in regards to forfeiture. By not filing a petition for discharge and not seeking a ruling on that issue prior to trial, that is forfeiture. He's also forfeited that issue as to speedy trial. He's also forfeited the issue as to a record by not filing a motion to complain. If he was being denied a record, he could simply file the motion to make it clear for the record that he wanted a record. That didn't happen. So again, we have forfeiture here. And so with that, as to the first issue, I have to raise the plain error argument in anticipation of that. So I argue that there's no clear error here. And also I argue in my brief that the evidence is not closely balanced. I'll address that a little bit later. So assuming that there's an argument to be made that the record is somehow incomplete or missing, which isn't the case here. But let's say there's sufficient argument here to be made that there is an incomplete record. There's two things that counsel would have to show that there's a lack of fault and that the missing record is material. He can't make either one of those two things because it's clear that the lack of fault issue is clear that defense counsel agreed to the orders. He signed the orders. So you can't say that there's no fault here, that there's not a court reporter or verbatim transcript of those proceedings when counsel agreed by signing the orders. He didn't sign them as the form. He didn't sign objection to it. There's nothing to indicate that counsel wasn't in full agreement with those orders. So you can't really say that there's no fault on the part of the defense here. The defense signed those orders. In addition to that, it has to be material to a meaningful review of a contention raised on appeal. Counsel doesn't raise a speedy trial issue on appeal. He raises a possible speedy trial issue on appeal. In this case, when you go through the cold record, you can see there really is no potential speedy trial violation. The record is very clear. The orders state from that very first status conference that order after that date reflects that counsel made a demand, whether oral in writing, for a speedy trial. There's nothing to indicate that counsel attempted to get the speedy trial running. Now, the defendant does file a petition on his own as a pro se, but he wasn't pro se. He was represented by counsel. So his petition could have been stricken. It didn't have to be addressed, but the court actually addresses it about a month later when the court makes that finding that only 48 days had elapsed. So there was no reason to have an evidentiary hearing on that motion either because it's based on what's in the cold record, and the cold record is very clear. There's no speedy trial violation. In regards to the second issue, I see my time's running out, but I want to make a point that in regards to the first comment or question, he argues that it was minimizing the standard of proof, but that comment is not designed to minimize the standard of proof. It's to clarify it, and it falls on those ZARE principles, and it's perfectly acceptable for counsel at trial to touch on the ZARE principles. In fact, it's something the Supreme Court has addressed. ZARE principles is just fundamentally untrue. He also argues that the cases that I cite are no longer valid authority on this issue because they predate the rule of 431B. Well, he makes an argument for 431A, and he makes a subsequent argument for 431B. 431A, although not necessarily referred to as 431A, has been around forever since the early 70s, perhaps from the time the Constitution that was adopted. 431B was added later after the ZARE case came out, but the principles existed well before 431B was established, and 431B originally established that defense counsel had to ask the court to make those admonishments. It was later amended to take that out and have the court make those admonishments, but there's absolutely nothing wrong with defense counsel standing up to ensure that the jurors understand and accept those ZARE principles. By asking, would you be able to agree to hold us only to that burden of proof beyond a reasonable doubt and not to any other burden higher or lower? That is not an effort to minimize the standard of proof. That's an effort to clarify and ensure that the jurors will fulfill their obligation to hold the state to the burden of proof of beyond a reasonable doubt. Nothing more, nothing less. In regards to the second comment, he complains of the comment about CSI, and he says that reduces the jurors' expectation of physical evidence. I don't think you'll find that that reduces the expectation of physical evidence. It clarifies what they will be seeing, and without being specific, it was a generalized statement, but it simply clarifies what the physical evidence would be. Again, defense counsel didn't object, so this is unpreserved error, and you can argue that it was both strategy or that the evidence is not closely balanced. I'm going to run out of time before I get to that. I make a fairly compelling argument in my brief about the evidence not being closely balanced, so unless you have questions, my time is up. Thank you, Mr. Berkley. Mr. Weinberg, go right ahead with your rebuttal. Thank you, your honors. I'd like to address a couple of things with regard to the first issue. The state appears to be taking the position that the only time that anything of appellate or constitutional significance can happen in a courtroom is during an evidentiary hearing, as this case itself readily demonstrates. That is not the case. Anytime the defendant is before the trial judge with his lawyer, with the state's lawyer, anyone else, any number of things can occur that can give rise to reversible errors, such as, for example, speedy trial issues, which would not generally come up as a matter of an evidentiary hearing. The state relies very heavily on all of these signed summary orders. First of all, I don't see any language in those summary orders that refers to whether or not a court reporter is present. I also don't see anything there that affirms that counsel is somehow agreeing that there shouldn't have been a court reporter present. And finally, I would note that the state apparently just ignores the fact that there is also the potential and the problem here of an ineffective assistance of counsel claim. If counsel was literally agreeing to hold two and a half years of first degree murder case off the record, that is deficient performance. And that in and of itself is not a fault that should be in the voir dire. A couple of things. First of all, the Rule 431A argument and the Rule 431B argument are not different. Rule 431A, among other things, says that the questioning should not concern matters that are already covered by the instructions given the jury. Rule 431B conveys those exact instructions on that exact point. So once Rule 431B is passed, that slightly alters the meaning of Rule 431A. Also, as previously argued, that was not the only grounds on which Edwards and Barrows are highly distinguishable from the present case. As to the question of whether this is clarifying or reducing, what the law says is that the reasonable doubt standard should not be defined at all. And whether the state wants to call it clarifying or they want to call it reducing or they want to call it anything else, as soon as you start telling the jury what that standard is not, you have begun telling the jury what that and be something that, to whatever extent there is any instruction to be given on that subject, the rules dedicate that responsibility to the trial court, who is the neutral manager of that proceeding, not to one of the parties. As to the CSI comments, the state claims this was clarifying what the jury was going to see. This was telling the jury don't expect too much forensic evidence. Their message was very clear. That's just something that happens on television. That doesn't happen in the real world. And we note that that's particularly significant in this case, where there was a profound lack of forensic evidence in circumstances where it ought to be plentiful. Mr. Jones, everyone agreed, was accompanied basically every moment from the time of the alleged shooting up until the moment where he was arrested by police. Witnesses testified, no, he never had any opportunity to wash his hands, change his clothes, clean off, do anything like that. Yet, despite having allegedly just shot a man at basically point blank range in a small living room of an apartment, he had no gunshot residue on him anywhere. The only blood that was found was a little bit on his shoes. This is scanned physical evidence under the circumstances, considering what one might expect, and particularly when considered in contrast with Mr. Cox, who vanished for 40 minutes, went to the unknown home of an unknown acquaintance whom he could not identify. Doesn't tell us where it is, other than that it's somewhere there in that same housing project. He's gone for 40 minutes until he shows up again at the scene of the murder and had more than enough time to dispose of physical evidence. So all of those things taken into account, it is significant when the state is during voir dire. And again, as noted in our briefs, if the state had made these arguments during closing argument, we would not be raising an closing argument. The jury is informed that this is argument. It is not law and it is not fact. It is not evidence. And they are then immediately instructed thereafter by the trial judge whose proper role that is. But this was the voir dire. This not only allowed the state to begin indoctrinating the jury with their idea of how they should see this case, it also gives the state the opportunity to utilize the juror's reactions to those statements and to those questions as a reflect that impact the entirety of the rest of the trial. So yes, could they have argued this in closing? Absolutely. But should they have argued it in voir dire? Absolutely not. If there are no questions on the subject. Justice Cage, Justice Vaughn. None, thank you. I have a question. Are you aware of any cases that say waiver of speedy trial is a substantive hearing that must be on the record or with a court reporter present or as a written waiver of speedy trial sufficient? Your Honor, I don't believe that there are any cases that specifically address whether there is required to be a transcript of those proceedings. Our argument proceeds from cases like Stark, Ramos and Applegren, which hold that all else set aside where the record is insufficient to allow direct review of a colorful claim and where that insufficiency is due to no fault of defendants, their right to a direct appeal has been denied. And that is rooted in their constitutional right. It is not rooted in Rule 608 or any other rules or procedural guidelines to what should or should not be included in the record. Mr. Berkley says the record is not vacant. Every time there was a hearing, it was reduced to a written order that the judge and the defense counsel signed and 80% of the time the defendant signed. So there's not an absence of record. It's just a record that's not on a transcription. Is that accurate? Well, Your Honor, as we've noted in our briefs, there's clear examples even just right here in the court's own notations that show precisely why that is not accurate. We detailed, I think, four different possible explanations for the court's notation that it had told the speedy order, we have absolutely no means by which to determine which, if any of those actually occur. These are brief summaries that don't detail anything that was happening. And on the other hand, we have the defendant's statement that he was asking for things to be placed on the record and they were not being put on the record. He says he was trying to invoke his speedy trial right, but his trial right was not being invoked. All we have are summary orders that don't say anything about any of that. And so we would say that while that provides, I guess you would say some record, it certainly does not provide a record sufficient for review. Thank you. Justice Gates? Nothing further. Thank you. Well, thank you, counsel. Obviously, we will take the matter under advisement. We will issue an order in due course. And I believe this ends our proceedings for this docket and we will stand in recess until the September docket.